[No. 37330-1-II.   Division Two.   December 15, 2009.]

CLARK COUNTY PUBLIC UTILITY DISTRICT NO. 1 ET AL.,
*Respondents*, v. THE DEPARTMENT OF REVENUE,
*Appellant.*

738

*Robert M. McKenna, Attorney General*, and *David M. Hankins, Assistant*, for appellant.

*George C. Mastrodonato* (of *Dorsey & Whitney LLP*) and *Michael B. King* (of *Carney Badley Spellman PS*), for respondents.

¶1 BRIDGEWATER, J. — The Department of Revenue (Department) appeals from a summary judgment for partial refunds to two public utility districts for privilege taxes imposed under RCW 54.28.020. Clark County Public Utility District No. 1 and Grays Harbor Public Utility District No. 1 (Districts) cross-appealed from the summary judgment that refunded only three years of taxes, not five. We hold that because the tax is imposed "for the act or privilege of engaging within this state in the business of operating works, plants or facilities for the generation, distribution

and sale of electric energy,"[1] RCW 54.28.020(1), and because the charges made for "basic service charges" are not derived from the sale of electric energy, they are not subject to taxation. But we affirm that the Districts are entitled to refunds for only three years, not five years. In short, we affirm.

## FACTS

¶2 This appeal turns on whether the privilege tax imposed under RCW 54.28.020(1)(a) applies to revenues the Districts received from basic service charges. There are slight differences in each district's implementation of their respective basic service charge during the challenged period, which we explain below.

### CLARK COUNTY PUBLIC UTILITY DISTRICT No. 1

¶3 Clark County Public Utility District No. 1 (Clark County PUD) is a customer-owned utility providing electric and water services in Clark County, Washington. As a part of its electric business, Clark County PUD charges a monthly basic service charge to all of its electric customers. The intended purpose of the basic service charge is to provide revenues for costs that exist independent of any variable energy value (kilowatt hour or demand). Specifically, the basic service charges that are levied monthly are created to provide revenues to cover costs that continue to exist in the event the utility does not sell any electricity to a particular customer. Some of these ongoing costs include debt service, insurance, and limited labor costs not related to the sale of electricity.

¶4 The basic service charge is subject to change on an annual basis, as it is a component of Clark County PUD's annual budget. The budget estimates annual costs (fixed and variable) and all revenues from the sale of energy,

---

[1] We refer to this as the "privilege tax."

revenues from the basic service customer charges, and other miscellaneous revenues. If the forecasts of revenue and expenses do not match up or provide an operating surplus, the Clark County PUD commission directs staff to complete a detailed revenue requirement and cost service study. The study examines the costs to serve each customer class. It separates variable costs associated with consumption (kilowatt-hour energy costs and demand energy costs) from the fixed costs associated with the basic service charges.

¶5 After receiving recommendations from staff and holding public meetings, the Clark County Board of Commissioners adopts customer rates, including the monthly basic service charge rates and the kilowatt-hour rate. The basic service charge varies only by the allocation of ongoing fixed costs to each customer class. The following is a schedule of basic service charges by class in effect during the periods at issue here:

January 1, 2000 through August 1, 2001

| [Customer Class] | [Basic Service Charge] |
| --- | --- |
| Residential and Small Farm Customers | $6.40 |
| General Service (no demand) | $15.00 |
| General Service (kilowatt and demand meter) | $30.00 |
| Industrial Service (kilowatt and demand meter) | $100.00 |

August 1, 2001 through December 31, 2004

| [Customer Class] | [Basic Service Charge] |
| --- | --- |
| Residential and Small Farm Customers | $6.40 |
| General Service (no demand) | $18.00 |
| General Service (kilowatt and demand meter) | $36.00 |
| Industrial Service (kilowatt and demand meter) | $120.00 |

Clerk's Papers (CP) at 218.

¶6 Clark County PUD bills the basic service charge to all customers with connected or metered services, regardless of whether the customer uses any electricity during the billing period. During the years at issue here, Clark County PUD

received revenues from basic service charges and has requested refunds of privilege tax paid on such revenues in the following amounts:

| Tax Year | Year Tax Paid | Revenue from Basic Service Customer Charges | Taxes Paid |
|---|---|---|---|
| 2000 | 2001 | $13,682,645 | $292,808 |
| 2001 | 2002 | $13,517,672 | $289,278 |
| 2002 | 2003 | $14,201,594 | $303,914 |
| 2003 | 2004 | $14,570,945 | $311,818 |
| 2004 | 2005 | $14,946,628 | $319,858 |

CP at 220.

GRAYS HARBOR PUBLIC UTILITY DISTRICT No. 1

¶7 Grays Harbor Public Utility District No. 1 (Grays Harbor PUD) is also a customer-owned utility and provides electricity to residents and businesses of Grays Harbor County, Washington. It likewise charges and collects a monthly basic customer charge from all customers, regardless of whether the customer consumes electric energy during the billing period. Grays Harbor PUD charges the basic customer charge as a means to recover fixed costs associated with operating the utility.

¶8 Similar to the Clark County procedure, the Grays Harbor County commissioners rely on cost of service studies to establish the basic service charge. The cost of service study determines the true cost to serve each class of customer. Costs are allocated to each customer class based on the study. The following is a schedule of basic service charges by class in effect during the periods at issue here:

744

## 10/2002 - 12/2005

| [Customer Class] | [Basic Service Charge] |
|---|---|
| Residential | $11.35 |
| Small Commercial | $13.60 |
| Medium Commercial | $22.60 |
| Small Industrial | $30.00 |
| Large Commercial | $79.20 |

## 6/2002 - 9/2002

| [Customer Class] | [Basic Service Charge] |
|---|---|
| Residential | $9.42 |
| Small General Service | $11.31 |
| Medium General Serv | $18.85 |
| Large General Service | $65.98 |
| Industrial | $65.98 |
| Irrigation | $9.43 |

## 10/2001 - 6/2002

| [Customer Class] | [Basic Service Charge] |
|---|---|
| Residential | $10.00 |
| Small General Service | $12.00 |
| Medium General Serv | $20.00 |
| Large General Service | $70.00 |
| Industrial | $70.00 |
| Irrigation | $10.00 |

## 2000 - 9/2001

| [Customer Class] | [Basic Service Charge] |
|---|---|
| Residential | $6.00 |
| Small General Service | $7.50 |
| Large General Service | $10.00 |
| Small Industrial | $10.00 |
| Large Industrial | $30.00 |
| Industrial (Unreg Voltage) | $30.00 |
| Industrial General Service | $30.00 |
| Irrigation | $5.00 |
| Very Large Industrial | $125.00 |

CP at 213-14.

¶9 Grays Harbor County PUD bills the basic service charges to all customers with connected or metered services, regardless of whether the customer uses any electricity during the billing period. During the years at issue here, Grays Harbor County PUD received revenues from basic service charges and has requested refunds of privilege tax paid on such revenues in the following amounts:

| Tax Year | Year Tax Paid | Amount | Refund |
| --- | --- | --- | --- |
| 2000 | 2001 | $3,553,414 | $76,043 |
| 2001 | 2002 | $4,975,477 | $106,475 |
| 2002 | 2003 | $5,527,424 | $73,675 |
| 2003 | 2004 | $5,496,175 | $118,287 |
| 2004 | 2005 | $5,643,157 | $120,763 |

CP at 215.[2]

PROCEEDINGS LEADING TO APPEAL

¶10 Under RCW 54.28.030, on or before March 15th of every year, the Districts must file annual reports with the Department detailing the revenues and costs of their electric energy operations for the preceding calendar year. The Department then computes the privilege tax under RCW 54.28.020 based on the annual report that the Districts submit. Thereafter, the Department notifies each district of the amount of privilege tax owed by June 1 of the calendar year.

¶11 The Districts filed claims against the Department in Thurston County Superior Court on December 28, 2005, seeking partial refunds of privilege taxes they paid in the years 2001 through 2005, based on revenues derived from basic service charges. Then, on October 31, 2006, they moved for summary judgment. Following briefings and a

---

[2] In the tax years 2003 and 2004, Grays Harbor PUD deducted basic service charges on its annual report to the Department, so it did not actually pay privilege tax on these revenues in the following years, 2004 and 2005. The Department subsequently assessed the privilege tax for these years on November 11, 2005. And Grays Harbor PUD paid the outstanding tax on December 6, 2005. The refund amounts shown in the chart above include the privilege taxes that Grays Harbor PUD ultimately paid in late 2005.

hearing, the trial court issued a letter opinion on October 22, 2007.

¶12 The trial court granted partial summary judgment in favor of the Districts. It held that the basic service charge was not subject to privilege tax imposed under RCW 54.28.020. Thus, the trial court granted the Districts a refund of privilege taxes paid on those revenues. Nonetheless, the trial court limited the refund period to three years rather than the five years the Districts sought. It also reserved for trial the issue of the amount of refunds owed to each district for trial.

¶13 Thereafter, the Districts and the Department agreed on the refund amounts for the three year period allowed by the trial court. The parties signed an agreed order and judgment on January 18, 2008. Under the order, Clark County's refund for the years of 2003 through 2005 totaled $935,590. Grays Harbor's refund for the years of 2003 through 2005 was $309,580. Neither judgment amount accrued interest because the three-year statute of limitations did not provide for the payment of interest on such refunds. *See* RCW 4.16.080(3) (statute limiting certain actions to three years, including "an action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument").

¶14 The Department filed a timely appeal, challenging the trial court's order granting summary judgment in the Districts' favor. The Districts followed with this timely cross appeal, in which they challenge the trial court's limitation of refunds to three years rather than five.

ANALYSIS

I. Standard of Review

¶15 We review a grant of summary judgment de novo and view the facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 429, 38 P.3d 322 (2002). We consider summary judgment appropriate where "there is no genuine issue as to any material fact and . . . the

moving party is entitled to a judgment as a matter of law." CR 56(c).

¶16 In addition, we review questions of law, including statutory construction, de novo. *City of Pasco v. Pub. Emp't Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992). When called on to interpret a statute, our fundamental obligation is to give effect to the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). "[I]f the statute's meaning is plain on its face, [we] must give effect to that plain meaning as an expression of legislative intent." *Campbell & Gwinn*, 146 Wn.2d at 9. The plain meaning of a statute may be discerned "from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Campbell & Gwinn*, 146 Wn.2d at 11.

¶17 We may not add words where the legislature has chosen to exclude them. *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003). We adhere to the rule of expressio unius est exclusio alterius, or specific inclusions exclude implication. BLACK'S LAW DICTIONARY 661 (9th ed. 2009). In other words, if a statute specifically designates the things on which it operates, we infer that the legislature intended all omissions. *In re Pers. Restraint of Bowman*, 109 Wn. App. 869, 875, 38 P.3d 1017 (2001), *review denied*, 146 Wn.2d 1001 (2002). Finally, only when a statute is ambiguous do we resort to principles of statutory construction, legislative history, and relevant case law to assist our interpretation. *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001).

¶18 Here, the parties agree that chapter 54.28 RCW is unambiguous. Therefore, we need not resort to principles of statutory construction, legislative history, and case law to assist our interpretation. *See Cockle*, 142 Wn.2d at 808. We need look only to the statute's plain words and related statutes to decipher legislative intent about the provisions at issue. *See Campbell & Gwinn*, 146 Wn.2d at 11.

## II. Gross Revenue From the Sale of Electric Energy

¶19 The crux of this case rests on whether the basic service charges billed and collected by the Districts are "gross revenue" and thus subject to the privilege tax imposed under RCW 54.28.020(1)(a). The Department maintains that the basic service charge squarely falls into the statutory definition of "gross revenue." Conversely, the Districts maintain that the basic service charges do not qualify as "gross revenue" under the statute. Based on the plain language of the statute, we hold that the basic service charges billed and collected by the Districts do not fall under the definition of "gross revenue" set forth in RCW 54.28.011.

¶20 RCW 54.28.020 grants the Department the authority to impose on every public utility district "a tax for the act or privilege of engaging within this state in the business of operating works, plants or facilities for the generation, distribution and sale of electric energy." RCW 54.28.020(1). Under the circumstances here, the tax imposed is "[t]wo percent of the *gross revenues derived by the district from the sale of all electric energy* which it distributes to consumers who are served by a distribution system owned by the district." RCW 54.28.020(1) (emphasis added). "Gross revenue" means "the amount received from the *sale of electric energy* excluding any tax levied by a municipal corporation upon the district pursuant to RCW 54.28.070." RCW 54.28.011. The amounts collected from the "sale of all electric energy" make up the gross revenue subject to privilege taxes under RCW 54.28.020(1)(a).

¶21 The statutory scheme does not define "sale of all electric energy." There is, however, uncontested evidence in the record that the measurement for the sale of electric energy is electrical power, which generally is expressed in kilowatt hours. Likewise, the undisputed evidence establishes that the Districts adhere to this practice.

¶22 This measure for the sale of electric energy corresponds to the common dictionary definition of the words. A

"sale" is "a contract transferring the absolute or general ownership of *property* from one person or corporate body to another for a price (as a sum of money or any other consideration)." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2003 (2002) (emphasis added). "Electric" means "relating to, or produced by electricity." WEBSTER'S, *supra*, at 731. And "energy" is "the capacity of acting, operating, or producing an effect." WEBSTER'S, *supra*, at 751. Therefore, the "sale of electricity" is a contract transferring the absolute or general ownership of property, i.e., electrical power or kilowatt hours, from the Districts to their customers for a price.

¶23 The Districts do not charge their consumers the basic service charges for the ownership or use of kilowatt hours. The basic service charges are imposed regardless of whether customers use kilowatt hours. It is undisputed that the Districts impose the basic customer charge regardless of whether the customer actually used electricity, or electric energy, in any given billing period. Stated another way, the Districts impose the customer service charge for the right to receive electric energy and not for the energy itself. The basic service charges are not associated with the transfer of property, i.e., electric energy. Thus, because the basic service charges are not associated with the transfer of electric energy, under the plain language of the statute those charges are not derived from the "sale of all electric energy." *See* RCW 54.28.020(1)(a).

¶24 The Supreme Court's recent decision in *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 210 P.3d 297 (2009), supports this holding. HomeStreet originated mortgage loans and then sold or securitized the loans to secondary lenders. *HomeStreet*, 166 Wn.2d at 448. HomeStreet retained the right to service some of the loans it sold and retained a portion of the interest on those loans as a service fee. *HomeStreet*, 166 Wn.2d at 447-48. RCW 82.04.4292 provides for a statutory deduction from the business and occupation (B&O) tax of RCW 82.04.220 for " '*amounts derived from interest* received on investments or loans

primarily secured by first mortgages or trust deeds.' " *HomeStreet*, 166 Wn.2d at 449 (quoting RCW 82.04.4292). After an audit, the Department ordered HomeStreet to pay the B&O tax on the amounts retained for its services because they were not derived from interest. *HomeStreet*, 166 Wn.2d at 450. HomeStreet paid the amounts owed and then sued the Department for a refund of the B&O tax, and the trial court granted the Department's motion for summary judgment. *HomeStreet*, 166 Wn.2d at 450. This court affirmed, holding that the income, while broadly derived from interest, was due to HomeStreet only because of its contractual relationship with the loan purchaser for servicing the loan. *HomeStreet, Inc. v. Dep't of Revenue*, 139 Wn. App. 827, 843, 844, 162 P.3d 458 (2007), *rev'd*, 166 Wn.2d 444.

¶25 The Supreme Court granted review and reversed, holding that the amounts at issue were "derived from interest" because the borrowers paid the money as interest on amounts loaned by HomeStreet. *HomeStreet*, 166 Wn.2d at 453-54. The court found relevant only the source from which the interest was derived, not the reason the money is received or taken from a source. *HomeStreet*, 166 Wn.2d at 454.

¶26 Our conclusion is consistent with *HomeStreet*'s application of the use of the term "derived from." Here, the Districts must pay tax on amounts "derived from" the sale of electric energy. RCW 54.28.020(1)(a). As in *HomeStreet*, the only relevant concern is the source from which the Districts received the basic fee. The Districts charge the basic service fee not in connection to the sale of electricity, but for basic services provided. Customers pay the fee regardless of electricity consumed. The Districts calculate the amount of the basic service fee based on the type of customer (business, residential, industrial), not on the customer's use of electricity. Therefore, under *HomeStreet*'s application of the term "derived from," the basic service fee is not derived from the sale of all electric energy.

¶27 Nevertheless, the Department urges us to reason that because the amount of the basic charge is based on, or related to, the amount of the electrical energy the customer uses, these costs are associated with the cost of providing electrical energy and therefore should be included in the Districts' gross revenue for the purposes of privilege taxation under RCW 54.28.020(1)(a). But what the Department is essentially asking us to do is to add the words "related to" or "associated with" to the plain meaning of the statute. Such an interpretation cannot be permitted under the plain language of RCW 54.28.020(1)(a). *Rest. Dev., Inc.*, 150 Wn.2d at 682.

¶28 Furthermore, our review of the entire statutory provision at issue supports our conclusion. RCW 54.28.020(1) states in full:

> There is hereby levied and there shall be collected from every district a tax for the act or privilege of engaging within this state in the business of operating works, plants or facilities for the generation, distribution and sale of electric energy. With respect to each such district, except with respect to thermal electric generating facilities taxed under RCW 54.28.025, such tax shall be the sum of the following amounts: (a) Two percent of the gross revenues *derived by the district from the sale of all electric energy* which it distributes to consumers who are served by a distribution system owned by the district; (b) five percent of the first four mills per kilowatt-hour of wholesale value of self-generated energy distributed to consumers by a district; (c) five percent of the first four mills per kilowatt-hour of revenue obtained by the district from the sale of self-generated energy for resale.

(Emphasis added.)

¶29 Contrary to the Department's contention, the plain language of RCW 54.28.020(1) does not support the proposition that the basic service charges should be included as gross revenues for purposes of computing the privilege tax. The measure of privilege tax imposed is "gross revenues derived . . . from the sale of all *electric energy* . . . distribute[d] to consumers." RCW 54.28.020(1)(a) (empha-

sis added). The measure of privilege tax imposed in subsection (b) is "the first four mills per kilowatt-hour of wholesale value of self-generated [*electric*] *energy*." RCW 54.28-.020(1)(b) (emphasis added). Similarly, the measure of privilege tax imposed in subsection (c) is "the first four mills per kilowatt-hour of revenue . . . from the sale of self-generated [*electric*] *energy* for resale." RCW 54.28.020(1)(c) (emphasis added). Thus, all three privilege taxes imposed under RCW 54.28.020 are measured by electric energy.[3] Next, the Department urges us to consider various bills introduced between 2001 and 2006 to decipher the legislative intent of RCW 54.28.020(1)(a). But these proposed bills failed. Moreover, we need not consider legislative history when, as the parties have agreed here, the statute is unambiguous. *Cockle*, 142 Wn.2d at 808. Accordingly, the Department's reliance on proposed bills is not relevant to our analysis.

¶30 Finally, the Department cites substantial case law to support its contention that it properly imposed privilege taxes on the basic service charge under RCW 54.28-.020(1)(a). But we need not evaluate case law to assist in interpreting an unambiguous statute. *Cockle*, 142 Wn.2d at 808.

¶31 In sum, under its plain language, RCW 54.28-.020(1)(a) does not impose a privilege tax on basic service charge fees. The trial court properly found that there were no genuine issues of material fact as to the meaning of RCW 54.28.020(1)(a). Moreover, the trial court properly held that the Districts are entitled to a partial refund of the privilege taxes paid on the basic service charges. And, the trial court properly entered partial summary judgment in the Districts' favor.

III. STATUTE OF LIMITATIONS

¶32 On cross appeal, the Districts claim that the trial court erred when it limited their privilege tax refund award

---

[3] Items (b) and (c) likely refer specifically to kilowatt hours because they pertain to self-generated energy. *See* RCW 54.28.020(1).

to three years under RCW 4.16.080(3). They contend that the trial court should have instead awarded them five years of refunds under former RCW 82.32.060 (2004).[4] The Department responds, alleging for the first time, that the trial court lacked subject matter jurisdiction to issue a refund of public utility district privilege taxes under chapter 82.32 RCW. The Department is correct: The five-year statute of limitations does not apply here and the trial court lacked subject matter jurisdiction to grant refunds under chapter 82.32 RCW.

¶33  Specifically, the Districts have failed to show that (1) the Department breached its duty to establish regulations or (2) the Department's general administrative provisions, chapter 82.32 RCW, apply to public utility district privilege tax assessment and collection procedures.

A. ADMINISTRATIVE PROCEDURE ACT STATUTE OF LIMITATION

¶34  During oral argument, the Department made a belated assertion that the Districts have no available remedy. It contended that the Districts' only available remedy was to challenge the taxation by means of the Administrative Procedure Act (APA), chapter 34.05 RCW. This argument fails.

¶35  Generally issues not raised in the trial court may not be raised for the first time on appeal. RAP 2.5(a). Neither party raised the issue of remedies available under the APA below; therefore, we do not address the merits of the argument.

---

[4] Former RCW 82.32.060 states in pertinent part:

(1) If, upon receipt of an application by a taxpayer for a refund . . . it is determined . . . that within the statutory period for assessment of taxes, penalties, or interest prescribed by RCW 82.32.050 any amount of tax, penalty, or interest has been paid in excess of that properly due, the excess amount paid within, or attributable to, such period shall be credited to the taxpayer's account or shall be refunded to the taxpayer, at the taxpayer's option. . . . [N]o refund or credit shall be made for taxes, penalties, or interest paid more than four years prior to the beginning of the calendar year in which the refund application is made or examination of records is completed.

## B. FIVE-YEAR STATUTE OF LIMITATION

¶36 Also during oral argument, the Districts made a belated contention that we should apply the last antecedent rule of statutory construction to resolve the statute of limitations issue. Based on the last antecedent rule, the Districts ask us to conclude that chapter 82.32 RCW is the default statute governing all refunds of taxes paid, unless otherwise specified. We decline to do so.

### 1. THE LAST ANTECEDENT RULE

¶37 The last antecedent rule of statutory construction provides that unless a contrary intent appears in the statute, a qualifying phrase refers to the last antecedent, and a comma before the qualifying phrase is evidence that the phrase applies to all antecedents. *In re Sehome Park Care Ctr., Inc.*, 127 Wn.2d 774, 781-82, 903 P.2d 443 (1995); *State v. Madrid*, 145 Wn. App. 106, 115, 192 P.3d 909 (2008); *State v. Hogan*, 145 Wn. App. 210, 217, 192 P.3d 915 (2008). Courts do not apply the last antecedent rule inflexibly or take it as always binding. *In re Pers. Restraint of Smith*, 139 Wn.2d 199, 205, 986 P.2d 131 (1999). Here, the Districts assert that under the last antecedent rule, the refund provisions found in chapter 82.32 RCW apply to privilege taxes imposed under RCW 54.28.020.

¶38 RCW 82.32.010 states:

> *The provisions of this chapter shall apply with respect to the taxes imposed* under chapters 82.04 through 82.14 RCW, under RCW 82.14B.030(3), under chapters 82.16 through 82.29A RCW of this title, under chapter 84.33 RCW, *and under other titles, chapters, and sections in such manner and to such extent as indicated in each such title, chapter, or section.*

(Emphasis added.)

¶39 Applying the last antecedent rule, the Districts contend that "in such manner and to such extent as

indicated in each such title, chapter, or section" refers only to the manner and extent in which taxes are imposed under other titles, chapters, and sections. It does not refer to or modify the provisions covered by chapter 82.32 RCW. Therefore, the Districts conclude that the provisions of chapter 82.32 RCW apply to the statutes specifically listed in RCW 82.32.010 in addition to "other titles, chapters, and sections" under which the Department collects taxes including those taxes imposed under RCW 54.28.020(1)(a). *See* RCW 82.32.010; *In re Sehome Park*, 127 Wn.2d at 781-82; *Madrid*, 145 Wn. App. at 115; *Hogan*, 145 Wn. App. at 217.

¶40 While applying the last antecedent rule would indeed lead to the Districts' desired result, the implications of such construction are difficult to quantify. Under the Districts' construction, *every tax* imposed by the Department would be subject to the excise tax general administrative provisions set forth in former chapter 82.32 RCW, unless otherwise specified. Chapter 82.32 RCW includes numerous provisions, addressing everything from excess payment of taxes (former RCW 82.32.060), and disclosure of return or tax information (former RCW 82.32.330), to purchaser's cause of action for over-collected sales or use tax (RCW 82.32.525), among many others. *See generally* ch. 82.32 RCW.

¶41 The Districts have failed to provide argument or authority addressing the implications of applying chapter 82.32 RCW to other titles under which the Department imposes taxes outside of the excise tax statutes, Title 82 RCW. For example, if we accept the Districts' argument, will chapter 82.32 RCW implicate the probate taxes that the Department imposes under chapter 83.100 RCW?

¶42 The potential ramifications of declaring chapter 82.32 RCW the default general administrative statute governing the Department for all taxes it imposes would be extensive and pervasive. Moreover, those ramifications are simply too great to quantify based on the argument and record that the parties have provided to us. Therefore, we decline the Districts' invitation to apply the last antecedent rule as a basis to conclude that chapter 82.32 RCW is the

default statute governing *all* the Department's imposition of all taxes, including the taxes imposed under RCW 54-.28.020(1)(a), unless otherwise specified.

## 2. Legislative Intent

¶43 Nevertheless, if we found any indication that the legislature intended for chapter 82.32 RCW to govern RCW 54.28.020, the Districts may invoke the five-year statute of limitations set forth in former RCW 82.32.060. Despite the Districts' valiant efforts, they have failed to establish such connection reasonably exists.

¶44 The privilege taxes imposed under chapter 54.28 RCW (1) are not included in the delineated statutes subject to chapter 82.32 RCW; (2) are not associated by reference to the delineated statutes subject to chapter 82.32 RCW; and (3) do not impose taxes "under other titles, chapters, and sections in such manner and to such extent as indicated in each such title, chapter, or section." RCW 82.32.010.

¶45 First, chapter 82.32 RCW does not explicitly apply to the privilege taxes imposed under chapter 54.28 RCW. *See* RCW 82.32.010. RCW 82.32.010 does not explicitly list chapter 54.28 among those chapters to which the Department's general administrative provisions apply. RCW 82.32.010.

¶46 Second, chapter 54.28 RCW is not associated with any of the taxes imposed under the statutes delineated in RCW 82.32.010. The Districts claim that they are "persons" and "taxpayers" under Title 82 RCW; therefore, they are entitled to relief under the Department's general administrative provisions enumerated in chapter 82.32 RCW. Br. of Resp'ts at 58. This reasoning is inherently flawed because the definitions they rely on apply only to the specific chapters in which they are found. For example, RCW 82.04.030 defines a "person" to include a "municipal corporation." The plain language of the statute, however, limits the applicability of the definition to that chapter. *See* RCW 82.04.010 ("Unless the context clearly requires otherwise,

the definitions set forth in the sections preceding RCW 82.04.220 apply *throughout this chapter*." (emphasis added)). If the Districts were challenging payment of business and occupation taxes under chapter 82.04 RCW, then certainly they could assert a claim under the general statutory provisions. *See* RCW 82.32.010. But that is not the case at hand.

¶47 Nor is it the case that because the Districts are "taxpayers" under RCW 82.02.010(3), they are entitled to recovery of overpaid privilege taxes under the general administrative provisions. The Districts note that for the purposes of Title 82 RCW, " 'taxpayer' includes any . . . corporation . . . liable for any tax or the collection of any tax hereunder, or who engages in any business or performs any act *for which a tax is imposed by this title*." RCW 82.02.010(3) (emphasis added). Based on this definition, they assert that they qualify as taxpayers and thus may invoke the procedures enumerated in RCW 82.32.180 to seek a refund of the privilege taxes that they paid. But again, the plain language of RCW 82.02.010(3) limits application of that definition to taxes imposed under Title 82 RCW. It is of no significance that the Districts qualify as taxpayers under RCW 82.02.010(3) because they do not seek refunds of taxes imposed under Title 82 RCW. They seek refunds of privilege taxes imposed under an entirely different title, RCW 54.28.020.

¶48 The Districts have failed to establish a connection between the privilege taxes imposed under RCW 54.28.020 and any of the delineated taxes to which the Department's general administrative provisions apply. Likewise, notwithstanding their last antecedent rule argument, the Districts have failed to establish that the privilege taxes imposed under RCW 54.28.020 are among the taxes imposed "under other titles, chapters, and sections" subject to the general administrative provisions enumerated in chapter 82.32 RCW. *See* RCW 82.32.010.

¶49 Nowhere in chapter 54.28 RCW did the legislature indicate the privilege taxes imposed therein are subject to

the general administrative refund procedures set forth in chapter 82.32 RCW. There is one reference to Title 82 RCW in chapter 54.28 RCW:

> Interest at the rate as computed under RCW 82.32.050(2) shall be added to the tax hereby imposed from the due date until the date of payment. The tax shall constitute a debt to the state and may be collected as such.

RCW 54.28.060.

¶50 This single reference to Title 82 RCW does not support the Districts' argument that the privilege taxes imposed under RCW 54.28.020 are subject to the general administrative procedures enumerated in former RCW 82.32.060. From the statute's plain language, the legislature specifically included a reference to the interest rate under RCW 82.32.050(2). But it did not include any reference to former RCW 82.32.060 granting aggrieved taxpayers under Title 82 RCW refund claims. Therefore, we hold that the legislature intended to omit a reference to the refund procedures enumerated in former RCW 82.32.060 and we decline to add words to the statute where the legislature has chosen to exclude them.[5] *In re Bowman*, 109 Wn. App. at 875 (expressio unius est exclusio alterius).

¶51 Finally, the fact that the legislature did not categorize the public utility district privilege tax under Title 82 RCW is significant. Title 82 RCW expressly addresses excise taxes. *See* Title 82 RCW. There is no indication that the legislature intended for the excise tax general administrative procedures found in chapter 82.32 RCW to apply to public utility district privilege taxes imposed under RCW 54.28.020.

---

[5] Notably, the legislature has indicated that remedies are available under chapter 82.32 RCW in statutes not listed in RCW 82.32.010. *See* RCW 35.102.080 (municipal business and occupation tax); RCW 82.48.090 (aircraft excise tax); RCW 82.49.065 (watercraft excise tax); RCW 82.50.170 (travel trailers and campers excise tax); RCW 82.65A.900(3) (intermediate care facilities for the mentally retarded).

¶52 The Districts have failed to show that the legislature intended the general administrative refund procedures set forth in former RCW 82.32.060 to apply to taxes that the Department imposes under RCW 54.28.020(1)(a).

## C. THREE-YEAR STATUTE OF LIMITATION

¶53 The Districts are left with one final remedy. Before the trial court, the Department argued that the five-year statute of limitation enumerated in chapter 82.32 RCW did not apply to the Districts' refunds. CP at 576. Instead, the Department argued that "[i]f a refund were appropriate, the correct limitations period would be three years from the date the tax payments were made. The three years is based upon RCW 4.16.080(3)." CP at 576 (footnote omitted); *see also* CP at 11 (Department's answer admitting the Department has a remedy available under RCW 43.01.072).

¶54 RCW 4.16.080 states in pertinent part:

The following actions shall be commenced within three years:

. . . .

(3) Except as provided in RCW 4.16.040(2), an action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument.

RCW 4.16.080(3).

¶55 As the Department noted below, courts have interpreted RCW 4.16.080(3) to apply to actions seeking recovery of invalid taxes. *See Henderson Homes, Inc. v. City of Bothell*, 124 Wn.2d 240, 248, 877 P.2d 176 (1994) ("This court has consistently held that the 3-year statute of limitations, RCW 4.16.080(3), applies to actions to recover invalid taxes.").

¶56 Additionally, the Department noted before the trial court that "there is statutory authority to provide refunds of privilege taxes when there has been an error of fact or law." CP at 575. To support this proposition, the Department relied on RCW 43.01.072, quoting it in full:

Whenever any law which provides for the collection of fees or other payments by a state agency does not authorize the refund of erroneous or excessive payments thereof, refunds may be made or authorized by the state agency which collected the fees or payments of all such amounts received by the state agency in consequence of error, either of fact or of law as to: (1) The proper amount of such fee or payments; (2) The necessity of making or securing a permit, filing, examination or inspection; (3) The sufficiency of the credentials of an applicant; (4) The eligibility of an applicant for any other reason; (5) The necessity for the payment.

RCW 43.88.170 contains nearly identical language:

Whenever any law which provides for the collection of fees or other payment by an agency does not authorize the refund of erroneous or excessive payments thereof, refunds may be made or authorized by the agency which collected the fees or payments of all such amounts received by the agency in consequence of error, either of fact or of law. The regulations issued by the governor pursuant to this chapter shall prescribe the procedure to be employed in making refunds.

¶57 Although there is no relevant published authority interpreting RCW 43.01.072, there is one relevant published authority specifically interpreting RCW 43.88.170. In that case, the Attorney General's Office (AGO) addressed whether a person was entitled to a refund of the motor vehicle excise tax when the applicable statute, RCW 82-.44.120, did not authorize a refund of the tax under the facts of the case. 1966 Op. Att'y Gen. No. 98. The AGO opined that the statute "applies when there is not a specific provision for refunds in the particular statute authorizing the collection of the tax or fee." 1966 Op. Att'y Gen. No. 98, at 6. In other words, the AGO opined that RCW 43.88.170 applied to tax refunds.

¶58 The Department agreed with and indeed asserted this argument before the trial court. Likewise, in their reply brief in support of their motion for summary judgment, the Districts argued that if chapter 82.32 RCW was not applicable, then RCW 43.01.072 and/or RCW 43.88.170 apply.

The Districts first questioned the applicability of RCW 43.01.072 and RCW 43.88.170 in a footnote they included in their cross appeal. And the Department first questioned the applicability of those statutes in a footnote in its joint response and reply brief. Because neither party raised this issue before the trial court, we may refuse to consider it on appeal. RAP 2.5(a). Furthermore, we may decline to address the merits of this issue because placing an argument of this nature in a footnote is, "at best, ambiguous or equivocal as to whether the issue is truly intended to be part of the appeal." *State v. Johnson*, 69 Wn. App. 189, 194 n.4, 847 P.2d 960 (1993).

¶59 Accordingly, we decline to address the merits of whether the Thurston County Superior Court had subject matter jurisdiction to refund any excess privilege tax payments under RCW 43.88.170 and/or RCW 43.01.072. Moreover, we decline to address the merits of whether the three-year statute of limitation under RCW 4.16.080(3) applies to the Districts' claims seeking recovery of allegedly invalid privilege tax payments under RCW 54.28.020. RAP 2.5(a); *Johnson*, 69 Wn. App. at 194 n.4. Thus, the trial court had proper subject matter jurisdiction and it did not err when it applied a three-year statute of limitation.

### D. INTEREST

¶60 Finally, the trial court did not award the Districts interest because interest is not available under RCW 43.88.170 and RCW 43.01.072.

¶61 We have been unable to find any case law or statutes under which we may award interest and costs to the Districts. The right to bring suits against the State must be exercised in the manner provided by statute. WASH. CONST. art. II, § 26. In this case, there is no statutory

authority to award interest and costs. *See* RCW 43.01.072; RCW 43.88.170.

¶62 Affirmed.

HUNT and QUINN-BRINTNALL, JJ., concur.

After modification, further reconsideration denied January 26, 2010.